IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION


JAIME ALVAR CARVAJAL                    §

VS.                                     §          CIVIL ACTION NO. 4:09cv222
                                                   CRIM NO. 4:03cr109(4)

UNITED STATES OF AMERICA                §

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Movant Jaime Alvar Carvajal, a federal prisoner proceeding with the assistance of counsel,

filed the above-styled and numbered motion to vacate, set aside or correct his sentence pursuant to

28 U.S.C. § 2255.   The motion was referred for findings of fact, conclusions of law and

recommendations for the disposition of the case.

Background

On March 16, 2004, a jury found Movant guilty of the offenses of conspiracy to manufacture,

distribute or possess with intent to   manufacture, distribute, or dispense 3,4 methylenedioxy-

methamphetamine (Ecstasy), methylenedioxy-methylamphtamine (MDMA), methamphetamine,

cocaine, and marijuana, as well as aiding and abetting, in violation of 21 U.S.C. § 846 and 18 U.S.C.

§ 2, respectively.  The Court sentenced him to 262 months' imprisonment.  On November 22, 2006,

the Fifth Circuit Court of Appeals affirmed Movant's conviction, *United States v. Carvajal*, 206 Fed

Appx. 391 (5th Cir. 2006), but remanded for re-sentencing pursuant to *Booker*. *United States v.*

1

*Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005).  On April 23, 2007, the Court re-

sentenced Movant to 210 months' imprisonment.  On February 12, 2008, the Fifth Circuit Court of

Appeals affirmed Movant's sentence.

In the present § 2255 motion, Movant asserts he is entitled to relief based on numerous

claims of ineffective assistance of counsel and because his right to a speedy trial was violated.  The

Government filed a Response, asserting that Movant's issues are without merit.  Movant filed a

Reply.

<u>Statement of Facts</u>

The Fifth Circuit Court of Appeals summarized the facts of the case in its opinion:

Beginning in 2001, the Drug Enforcement Administration (DEA) began investigating
possible drug trafficking in Dallas, Texas, based on the information of Keith Bridger,
a friend of Carvajal's who became a DEA informant based on a desire to "get out"
of the drug scene. Bridger specifically provided information to the DEA about a drug
dealer named Agron Perkovic. Because he knew that Carvajal was involved with
Perkovic, Bridger urged his friend to cooperate with the investigation in order to
protect himself from criminal charges.

 Carvajal met with DEA agents at least twice, and the agents asked Carvajal to
contact them if he had any useful information, although the agents later testified that
they did not believe Carvajal was being truthful with them. Based on the arrests of
Perkovic and others resulting from Bridger's information, it became obvious to the
DEA that Carvajal was a major participant in the same drug ring as Perkovic,
especially after Perkovic sold Carvajal 1000 ecstasy pills the day before Perkovic's
arrest. Carvajal supplied Perkovic with methamphetamine, cocaine, and marijuana
during 2001 and 2002. Other witnesses testified extensively about drug deals with
Carvajal as well.

During this same time period, Carvajal was receiving shipments of drugs transported
by Michael Shawn Mayes. Mayes was arrested near San Antonio, Texas, in
September of 2002 while transporting 40 pounds of marijuana from McAllen, Texas,
to Dallas, Texas, allegedly for Carvajal. In cooperation with Texas authorities, Mayes
called Carvajal after he was arrested to talk about the delivery of the marijuana.
During this conversation, which was recorded, Carvajal stated that he owned the
marijuana and that he was "the backbone of this organization." At issue in part in this

appeal is the extent to which these events are connected to the charged conspiracy.

While the investigation of Carvajal was ongoing in the Eastern District of Texas, another investigation related to his dealings with Mayes was ongoing in the Southern District of Texas. On June 12, 2003, Carvajal and nine other defendants were indicted in the Eastern District on charges of being involved in a conspiracy related to illegal substances. Two months later, Carvajal was separately indicted in the Southern District for the events related to Mayes's transport of marijuana.

Seven of the defendants in the Eastern District case pleaded guilty, but Carvajal did not and was convicted by a jury on March 16, 2004. The government moved to admit at trial in the Eastern District evidence, including a tape-recorded conversation between Mayes and Carvajal, a transcript of that conversation, and the thirty-eight pounds of marijuana that Mayes was transporting ("Mayes evidence"), that was the subject of the indictment in the Southern District. The government argued that the Mayes evidence was evidence of the conspiracy charged in the Eastern District. Carvajal objected, arguing that the evidence was extrinsic evidence not allowed under FED.R.EVID. 404(b). The district court admitted the evidence because the indictment covered the years 1999–2003 and mentioned Carvajal's activities with "others unknown" to the grand jury.

In addition to the recording of Carvajal's conversation with Mayes, the government also produced many witnesses against Carvajal, including Bridger and Perkovic. These witnesses implicated Carvajal in multiple drug transactions during the years at issue in the indictment. Perkovic testified about his many transactions with Carvajal involving marijuana, ecstasy, cocaine, and methamphetamine. Bridger corroborated this testimony.

Carvajal was convicted by the jury and sentenced by the district court under the then-mandatory United States Sentencing Guidelines on November 4, 2004, to 262 months imprisonment, five years supervised release, and a $100 special assessment. The indictment against Carvajal in the Southern District of Texas was dismissed after his conviction in the Eastern District. Carvajal filed a timely appeal that was dismissed for lack of prosecution. This court reinstated Carvajal's appeal on September 29, 2005.

*Carvajal*, 206 Fed Appx 391, at 393.

<u>Federal Habeas Corpus Relief</u>

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different

3

from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992).  A movant in a § 2255 proceeding may not bring a broad based attack challenging the legality of the conviction.  The range of claims that may be raised in a § 2255 proceeding is narrow.  A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (*citations omitted*).  A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude."  *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).

Procedurally Barred

Movant's issue concerning a violation of his right to a speedy trial could have been raised on direct appeal, but was not.  Unconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in collateral proceedings. *United States v. Towe*, 26 F.3d 614, 616 (5th Cir. 1994).  Here, Movant could have raised this issue on direct appeal as the record was fully developed, but chose not to do so.  Thus, he is procedurally barred from asserting it in the instant motion.  *Id*.  The record was sufficiently developed at trial for the appellate court to be able to make a judgment.  Movant did not raise the issue on appeal and he has failed to show cause or prejudice for the default, other than making a bald assertion that his counsel was ineffective for failing to do so.  *Id*; *United States v. Lopez,* 248 F.3d 427, 433 (5th Cir. 2001) (defendant is barred from raising claims in his § 2255 motion that he failed to raise on direct appeal unless he shows cause for the omission and prejudice resulting therefrom);  *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983);  *Joseph v. Butler*, 838 F.2d 786, 788 (5th Cir. 1988) (conclusory allegations and bald assertions are insufficient to support the motion).  Accordingly, this issue is procedurally barred.

4

## Ineffective Assistance of Counsel - Trial and Appeal

Movant presents several issues asserting he is entitled relief due to the ineffectiveness of both his trial and appellate counsel.

### Legal Standard

A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). In order to succeed on a claim of ineffective assistance of counsel, a movant must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. 466 U.S. at 690, 104 S. Ct. at 2066. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984). Secondly, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Movant must "affirmatively prove," not just allege, prejudice. *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.*, 466 U.S. at 697, 104 S. Ct. 2052.

The Fifth Circuit has held that to prevail on a claim of ineffective assistance of counsel on

appeal, the petitioner must make a showing that had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991), *citing Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). In a counseled appeal after conviction, the key is whether the failure to raise an issue worked to the prejudice of the defendant. *Sharp*, 930 F.2d at 453. This standard has been affirmed by the Supreme Court. *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed.2d 756 (2000) (holding that the petitioner must first show that his appellate attorney was objectively unreasonable in failing to find arguable issues to appeal, and also a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief raising these issues, he would have prevailed on his appeal). *See also Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000); *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Furthermore, an appellate counsel's failure to raise certain issues on appeal does not deprive an appellant of effective assistance of counsel where the petitioner did not show trial errors with arguable merit. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973). Appellate counsel is not required to consult with his client concerning the legal issues to be presented on appeal. *Id.* at 1197. An appellate attorney's duty is to choose among potential issues, using professional judgment as to their merits – every conceivable issue need not be raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 749, 103 S. Ct. 3308, 3311-12, 77 L. Ed.2d 987 (1983).

<u>Failure to Pursue the Right to a Speedy Trial</u>

Movant complains that both his trial counsel and his appellate counsel failed to pursue his right to a speedy trial. The Speedy Trial Act requires that federal criminal defendants be tried within seventy non-excludable days from the filing date of the indictment or from the date of the

defendant's initial appearance before a judicial officer, whichever occurs later.  18 U.S.C. § 3161 ( c) (1); *United States v. Willis*, 958 F.2d 60, 62 (5th Cir. 1992).  The Act, however, specifies that certain days are to be "excluded" from the 70-day calculation.  18 U.S.C. § 3161 (h) (1); *United States v. Gonzales*, 897 F.2d 1312, 1315 (5th Cir. 1990).  When analyzing a violation of the right to a speedy trial, the Court considers (1) the length of delay, (2) the reason for the delay, (3) defendant's assertion of the right to a speedy trial, and (4) the prejudice resulting from the delay.  *Barker v. Wingo*, 407 U.S. 514, 531-33, 92 S. Ct. 2183, 2192-93, 33 L. Ed.2d 101 (1972).

A *Barker* analysis is not necessary here because in a multi-defendant prosecution, such as in this case, the Speedy Trial clock begins to run when the last co-defendant makes his initial appearance in court.  *See United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994), *cert. denied Rodriguez v. United States*, 513 U.S. 1156, 115 S. Ct. 1113, 130 L. Ed.2d 1077 (1995).  Here, Movant's co-defendant, John Tarzhi, made his initial appearance on January 21, 2004.  Consequently, the Speedy Trial clock for Movant's claim did not start until January 21, 2004.  There were only 40 days from January 21, 2004 until Movant's trial date of March 1, 2004.  Thus, the Court did not violate the 70-day time period required by the Speedy Trial Act.  Accordingly, neither trial counsel nor appellate counsel can be found ineffective for failing to pursue this claim.  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance).  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994). Movant has neither shown deficient performance nor has he shown that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  He also has not shown that,

had appellate counsel raised the issue on appeal, he would have prevailed. *Sharp*, 930 F.2d at 453.

Trial Counsel Robert Jarvis

Movant asserts that he is entitled to relief because trial counsel Jarvis[1] failed to investigate, failed to call numerous witnesses, failed to adequately pursue a plea bargain, and failed to obtain evidence for use in his defense.

A defendant who alleges a failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982). Here, Movant has presented nothing but a conclusory claim that counsel failed to investigate. Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 7 99 (5th Cir. 1982). On the other hand, Jarvis states in his affidavit that he spent more than 600 hours preparing for trial, and his legal assistant spent much time on the case, as well as an investigator hired for Movant's defense. He noted that he was able to attack many of the Government's specific dates through evidence obtained. Movant has not met his burden – he has neither shown deficient performance nor prejudice. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Furthermore, as it concerns counsel's failure to call certain witnesses, Jarvis stated in his affidavit that he called all the witnesses he believed had relevant information for the jury to hear.

---

[1] Jarvis ultimately represented Movant at trial. However, as will be discussed below, Bruce Anton was initially retained by Movant. Anton then referred Movant to Gary Udashen, after discovering a conflict of interest. The Court allowed Anton to withdraw and substituted Udashen as counsel on July 23, 2003. On October 10, 2003, Udashen was allowed to withdraw when Movant wished to retain Jarvis.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978). Further, the presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985).  A petitioner must overcome a strong presumption that his counsel's decision in not calling a particular witness was a strategic one. *Murray v. Maggio, Jr.*, 736 F.2d 279, 282 (5th Cir. 1984).  Where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance are viewed with great caution. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S. Ct. 3534, 82 L. Ed.2d 839 (1984).  Moreover, to succeed on the claim, Petitioner must have shown that had counsel investigated, he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would have been favorable and they would have been willing to testify on Petitioner's behalf. *Alexander*, 775 F.2d at 602; *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir. 1984), *cert. den.*, 469 U.S. 1041 (1984).  Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982).

Movant has presented no evidence showing that any individual from his long list of potential witnesses was willing and able to testify on his behalf.  Further, he has provided no evidence showing what the substance of their testimony would have been. *Alexander*,  775 F.2d at 602; *Gomez v. McKaskle*, 734 F.2d at 1109-10.   He also has not shown that the decision  not to call the witnesses was not trial strategy.  Conclusory claims are insufficient to entitle a habeas corpus

petitioner to relief. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799.  Unsupported assertions are not sufficient to overcome the strong presumption that the decision to not call the witnesses was not a trial strategy.  *Alexander*, 775 F.2d at 602; *Murray*, 736 F.2d at 282.

Furthermore, Movant has presented only his conclusory allegation that trial counsel failed to adequately pursue a plea bargain or that he failed to obtain trial evidence for his defense.  Habeas corpus relief will not be granted based on conclusory claims. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. Movant has failed to allege with specificity what further investigation would have revealed and how it would have altered the outcome of the trial.  *Gray*, 677 F.2d at 1093.  He has failed to show deficient performance or prejudice. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Pre-Trial Counsel Bruce Anton

Movant also claims that Anton was ineffective because of a conflict of interest.  Anton was originally retained to represent Movant.  In response to Movant's claims in the instant action, Anton filed an affidavit.  In it, he noted that he had represented Movant as far back as 1998 in state court charges.  He remembered that Movant referred Joel Keith Bridger to him for representation on state charges as well.  After learning some facts suggesting that Bridger might be an adverse witness in Movant's federal criminal case, Anton told this to Movant, explaining that he would be conflicted from representing Movant or Bridger in federal litigation.  Anton filed a motion to withdraw as counsel, which was granted.

Movant also complains that Anton referred Gary Udashen to him.  In response to Movant's complaints, Anton noted in his affidavit that he and Udashen are attorneys in an office sharing firm.  He noted that each attorney maintains their own private practices, separate and apart from other attorneys in the office sharing firm.  He also noted that Movant was aware of this since Movant and

10

his father met with Udashen at their offices when Anton first introduced them to Udashen. At that time, Movant and his father were both informed that Anton could no longer have any contact on the case. Anton further affirmed that no information concerning Movant's case was ever conveyed to Bridger.

To show ineffective assistance of counsel based on a conflict of interest arising from multiple representation, a defendant must show that his counsel was acting under the influence of an actual conflict that adversely affected representation. *United States v. Culverhouse*, 507 F.3d 888, 893 (5th Cir. 2007). Multiple representation does not necessarily create an actual conflict of interest for ineffective claims. *Id*. However, there is an actual conflict, for purposes of ineffective claims, when the attorney knows that his client's interests diverge and must then choose between the interests of multiple clients, or be compelled to compromise his duty of loyalty. *Id*. A conflict of interest must be actual, rather than potential or speculative, to violate Sixth Amendment Standards. *Mitchell v. Maggio*, 679 F.2d 77, 78-79 (5th Cir. 1982). A claim of conflict of interest must normally be analyzed as an ineffective assistance of counsel claim, as developed by in *Strickland*, although a more lenient standard applies when an attorney's representation of multiple parties creates a conflict of interest. *Perillo v. Johnson*, 79 F.3d 441, 447 (5th Cir. 1996) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed.2d (1980)). To prevail on a *Cuyler* claim, a petitioner need only show that his attorney labored under an actual conflict of interest that adversely affected his counsel's performance. *Id*. *Cuyler* is reserved for circumstances where counsel represents multiple clients with conflicting interests. *Lockhart v. Johnson*, 104 F.3d 54, 58 (5th Cir. 1997).

Here, Movant points to no evidence from the record to suggest that Anton did not inform him of the conflict of interest or that Anton actually acted under the influence of any actual conflict.

Anton states in his affidavit that he informed Movant of the conflict as soon as he became aware of it, and referred Movant to different counsel. Anton also stated in his affidavit that Movant was not honest with him concerning the charges, so he was unable to initially discover the alleged conflict. The record shows, however, that Anton filed a motion to withdraw, which was granted. Movant has not shown that counsel acted under an actual conflict, as counsel asked to be allowed to withdraw from representation upon learning of Bridger's potential involvement in the case. *Cuyler*, 446 U.S. at 348, 100 S. Ct. at 1718; *Culverhouse*, 507 F.3d at 893.

Furthermore, Movant has presented only his conclusory allegation that trial counsel failed to adequately pursue a plea bargain or that he failed to obtain trial evidence for his defense. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. In his Reply, Movant presents as an attachment a letter from Gary Udashen in which Udashen tells Movant's father, "Pursuant to yours and Jaime's request, I have informed the U.S. Attorney that Jaime will not accept a plea agreement in this case." It appears that Movant was not interested in a plea agreement; thus, he cannot complain that his attorney did not pursue a plea agreement. Furthermore, his complaint that his codefendants pleaded guilty and received lighter sentences is without merit as Movant's sentence was within the guidelines. Since Movant did not plead guilty and took his changes at trial, he did not receive acceptance of responsibility points as did his codefendants who pleaded guilty. *United States v. Gray*, 565 F.2d 881, 892 (5th Cir. 1978). Movant has simply failed to show deficient performance or prejudice. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

<u>Conclusion</u>

In each of his ineffective assistance of counsel claims, Movant has failed to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the

proceeding would have been different.   *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.   He has also failed to show that counsel acted under an actual conflict, as counsel asked to be allowed to withdraw from representation upon learning of Bridger's involvement in the case.   *Cuyler*, 446 U.S. at 348, 100 S. Ct. at 1718; *Culverhouse*, 507 F.3d at 893.   In sum, Movant has failed to show a violation of a federal constitutional right.   *Lowery*, 988 F.2d at 1367.   Movant's motion should be denied.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability."   28 U.S.C. § 2253(c)(1)(B).  Although Movant has not yet filed a notice of appeal, it is respectfully recommended that this Court, nonetheless, address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court.   Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).   The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04, 146 L. Ed.2d 542  (2000).   In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable

13

or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003).  When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a COA should issue when the movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37, 123 S. Ct. 1029, 1039, 154 L. Ed.2d 931 (2003) (citing *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604). Accordingly, it is respectfully recommended that the Court find that Movant is not entitled to a certificate of appealability as to his claims.

<u>Recommendation</u>

It is accordingly recommended that Movant's motion for relief under 28 U.S.C. § 2255 be denied and the case dismissed with prejudice.  It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79

14

F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**SIGNED this 16th day of August, 2012.**


_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE

15